The last case this morning is 5-23-0217, People v. Taylor. Arguing for the appellant is Christopher Evers. Arguing for the athlete is Jessica Theoratos. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings today. Good morning. Good morning again, Ms. Theoratos. Good morning. Good morning, Mr. Evers. On behalf of the appellant, would you like to proceed? Yes, thank you very much. Your Honors, Chris Evers of the Austin State Appellate Defender for Mr. Melvin Taylor. For today's argument, I'm planning to focus on the sufficiency and ineffective assistance of counsel claims, but of course, I'll be happy to answer any questions on those claims and the one-act crime claims as well, if your addresses have questions. After the sufficiency claims, Mr. Taylor was convicted of one count of home invasion, one count of armed robbery, two counts of armed violence, all under an accountability theory, because the state's evidence was very clear that the out-of-control aggressor, Mr. Harris, was the one that struck both Ms. Payne and Ms. Albright. But ultimately, the evidence is not sufficient under an accountability theory to show that there was a shared common design or in the criminal intent Mr. Taylor had with Mr. Harris when he entered that place to sustain the In summary, because our briefs go into detail on all the kind of the inadequacies of the state's evidence, that on the night in question, it was 11 30 p.m. on November in a house that had no power. It was very, very dark, the only light source being two blocks away or streetlight on the side of the road. It was a very chaotic situation because Ms. Albright was clear that when Harris entered the house, he immediately began hitting her. Ms. Payne woke up to this confrontation going on there. Both had drunk a great deal of alcohol beforehand and Ms. Albright testified she had other drugs in her system. During this chaotic situation, therefore, it's a little suspect that Mr. Taylor was even holding a bat at all as there was conflicting evidence for another witness who said he'd never had anything in his hand. But more importantly, the evidence from the state was that Mr. Taylor never even took an action towards Ms. Albright or Ms. Payne until Harris had after struck them a couple of times and began yelling at him, screaming at him to empty he was almost threatening himself, demonstrate that he did not have a common design or shared criminal intent when he entered there. He was only acting based on being threatened. And even then when he did so, he acted carefully according to Ms. Albright, showing that he was trying to be gentle and not go in there with the idea to rob them from the get-go. And finally, for the sufficiency claims on the overall accountability aspect, Ms. Albright's testimony herself at trial demonstrated that she was upset with Mr. Taylor. She became upset, had to take a break there and understand the event that she went through. But she painted him with a brush of the three other people who were present that evening, George Harrington, Dana Littlefield, and Payne herself, that Mr. Taylor didn't do anything to come, didn't come there to do anything to her. He just didn't help her when Mr. Harris himself was attacking her. That's how she painted him, testified to him and looked at him and accused him of that during the trial. All of that shows that there was not a shared common design or shared criminal intent Mr. Taylor had when he entered that house. And it was Harris who got aggressive, out of control, and struck those women repeatedly. Quickly, as to the other sufficiency claims, as for the home invasion claim, the limited authority doctrine focuses on the moment that Mr. Taylor stepped through the threshold of that house. What was his intent in his mind going in there? And the only evidence we really have of that, of course, is what he did after he entered the building. And as I just described, he did took, sorry, I get very fast sometimes moving along there. He took no actions until Taylor, screaming, threatening him, asked him to empty pockets and touch those women. That demonstrates his hesitancy to act and only being act, only acting after he had been yelled at, shows that he did not have that common design or shared criminal intent. As for the armed robbery charge, Payne claimed that she had $400 in her pocket, but she never testified that she saw him. What about, counsel, what about entering a residence in the middle of the night with a baseball bat? Isn't that a pretty clear indication of intent? No, Your Honor, I don't think so. This was, these men were going at 1130 at night for a place that had no electricity to basically what was a drug flophouse. And they knew that, didn't know who was there, and there was a bat is an inherently evidence that they planned to hit someone with it. Now, Mr. Harris certainly did, and there's no dispute about that. But just having a bat, given the circumstances of the house and what was there for sure, doesn't rise to that as our position. And I'm sorry, Your Justice, I think I might have. So you're saying that they enter because of the nature of the place they're entering the house with a bat for defense purposes? Well, that's the, that's the, that is the reason I think Mr. Taylor certainly, if he had a bat at all, and there's competing evidence about that. Now, Harris entered there to hurt those women. There's no doubt he thought they stole from him, and that's why he wanted to hurt them. That's actually at the preliminary hearing. He told an officer that. But what Harris wanted to do isn't inherently proof that Taylor knew he was going to do that when he entered the house, or that he agreed to that or wanted to do any of that. The evidence shows that he was tentative. Surprise, Harris was attacking these women. He did nothing until he was screamed at by the younger man, bigger man, to go empty pockets. And that's when he acted. Well, how does this being an accountability theory affect how we analyze the ineffective claim? I don't think it ultimately changes it much because the two pieces of evidence that are the subject of the ineffective claims go to cutting against the idea that Taylor had any knowledge of what Mr. Harris was going to do or had any incentive to participate in something like that. The videotape statement demonstrates that Albright says that Mr. Taylor was falsely accused for just giving someone a rise. He had no idea what Mr. Harris was going to do. That goes to the heart of the accountability theory for all four of the charges. The second piece of evidence showing that Mr. Harris believed that the women had stolen his debit card earlier goes cuts against the idea that Taylor had any incentive to participate in something when he wasn't wrong, that he simply gave Mr. Harris a ride and didn't know what he was planning to do here. So I think both of those go directly to the accountability theory because there's no dispute. Mr. Taylor didn't hit or hurt anyone. At most, he touched these women after being directed to do so. And so moving to the ineffective very quickly, then let's go back to that. Uh, where did the bats come from? Were they both in with them when they started? Or did they say, here, take a bat? Or what? Is there any evidence of what happened or how he got a bat? Well, the evidence, Your Honor, Albright testifies that she saw both men in the doorway holding bats. Uh, Ms. Payne said she saw both as bats. Uh, Dana Littlefield testified she never saw Mr. Taylor with a bat. But it all starts basically in the door of the house and inside the house. There's no evidence from beforehand, someone coming, entering the house or approaching the door. In other words, nobody saw anyone enter with two bats. And then it was kind of they entered with each one must enter with each having a bat. Ms. Albright testified that in the doorway, she saw both men, each holding a separate object, a bat or something like that. But certainly, Mr. Taylor never struck anyone with a bat if he had one there. They were both women were confident and clear about that. Okay. Failing to get the evidence admitted properly was objectively unreasonable. All the defense counsel had to do for the video statement was just under Rule 613 was asked Ms. Albright about. He had the statement. He had turned it over in discovery a long time beforehand, and there was plenty of time to plan. He wasn't surprised by it. And not asking that basic process was objectively unreasonable. He should have known the rule. Plus, Ms. Albright was subject to recall. He thought he could bring the statement on his own and his defense in case in chief. He couldn't, but he could have asked Ms. Albright to be recalled and then confronted her. He chose not to do that. As for the statement or the evidence of the debit card stuff, he could have asked both women about that also. Mr. Harris himself was present. He was a state witness, had been brought back from prison on an order of habeas corpus, and had been given use immunity. There was no basis for him not to get this evidence admitted. And it was prejudicial because, as I was answering earlier, both those pieces of evidence cut against the state's argument and a shared common design or criminal intent with them. Both cut against that Mr. Taylor had any idea what was going to happen inside that house from Mr. Harris. And very quickly, the last ineffective sentence claim goes to the sentencing. Counsel did speak at sentencing and listed some of the facts in the pre-sentence investigation report, but just listing the facts or having the trial court read it is not the same as advocating and putting those facts in context. The court found that there was no mitigation factors and went out of its way to point out that counsel never argued for any of the statutory mitigating factors. And there were some there. The remission of Mr. Taylor's cancer, the fact that he had been a law-abiding citizen for several, almost a decade before this happened, and even that most recent run-in in 2013 was a conditional discharge claim, and the fact that there was a great deal of criminal history, the court noted, and the statement focused on, doesn't put in context. A lot of those crimes, and certainly the most serious ones, took place when Mr. Taylor was a teenager or in his 20s, more than 40 years ago. Sentencing was about who Mr. Taylor was at that moment of the sentencing, not who he had been 30, 40 years ago. And counsel's failure to kind of put that together and present those mitigating statutory factors was prejudicial. And given the ultimate sentence he got, mid-range sentences for both of the class X's, which because there wasn't sufficient advocacy. Your Honor, my time is up there. If there's any additional questions, I would happily answer those. Otherwise, I will end my argument. Mr. Evers, thank you. Just more questions? No other questions. Justice Welch? No questions. Mr. Evers, you will have some rebuttal time after Ms. Theoratos argues for the state. Ms. Theoratos, are you ready to proceed? Yes, thank you. May it please the Court, good morning. My name is Jessica Theoratos, and I represent the people. Defendant has chosen to focus on particular arguments, so I'm going to try and respond accordingly and stand with them. I brief for the remainder of the issues. First, defendant was legally accountable for the acts of Dante Harris, where Dante Harris beat Ms. Albright and Ms. Payne with a baseball bat, and defendant stood alongside him holding a bat and then stole from the court. In assessing whether the evidence against the defendant was sufficient to prove guilt beyond a reasonable doubt, a review in court must view the evidence in the light most favorable to the people and determine whether a rational try or fact could have found the essential elements of the crime beyond a reasonable doubt. A person is legally accountable for another's criminal conduct if either during or before the commission of an offense. With the intent to promote or facilitate such offense, he solicits, aids, abets, agrees, or attempts to aid such person in the planning or commission of the offense. To prove that the defendant possessed the intent to promote or facilitate the crime, the people must present evidence which establishes beyond a reasonable doubt that either one, the defendant shared the criminal intent of the principal, or two, there was a common criminal design. Here, the people established the defendant entered a residence unannounced as the victim slept holding a baseball bat with Dante Harris and thus must have shared Harris' motive to commit a crime within the residence. Dante Harris beat the victims with a baseball bat and defendant helped him holding his own bat and searching the victim's pockets and then he, the defendant, assisted by convincing Dana Littlefield to leave with them. Defendant drove the getaway car. It was proper for the jury to conclude that defendant shared the criminal intent of the principal, Dante Harris, even though defendant did not swing his bat. Alternatively, defendant could have been found guilty under common criminal design rule. The common criminal design rule provides that where two or more persons engage in a common criminal design or agreement, any acts in furtherance of that common criminal design committed by one party are considered to be acts of all the parties of the design or agreement and all are equally responsible for the consequences of the further acts. Under the common criminal design rule, proof that the defendant was present during the perpetration of the offense, that he fled from the scene, that he maintained a close affiliation with his companions after the commission of the crime, and that he failed to report the crime are all factors that the trier of fact may consider in determining the defendant's legal accountability. Ultimately, when viewing the light, the evidence in the light most favorable to the prosecution, defendant and Dante Harris broke into George Arrington's residence looking to steal money from the victims. Defendant held the baseball bat while Dante Harris beat two women with his bat. After they were beaten, defendant searched their pockets and stole $400 and a weed and a marijuana pipe. The defendant and Dante Harris convinced one of the occupants of the house to pour out her purse. Defendant drove the getaway vehicle. All this evidence was properly considered by the jury in finding that the people had met their burden and this establishing defendant was guilty under an accountability theory of home invasion, armed robbery, and armed violence. The next issue raised by defendant is ineffectiveness at the trial level and this people submit that the trial counsel was not ineffective for the reasons complained of. Defendant contends that a videotaping of Ms. Albright should have been used as impeachment evidence but her statements in the video are consistent with her testimony and the exclusion of the video would fall under sound trial strategy. Generally, the examination or impeachment of a witness is considered to be trial strategy which does not support a claim of ineffective assistance of counsel. The manner in which to cross-examine a particular witness involves the exercise of professional judgment which is entitled to substantial deference from a reviewing court. Here, defense counsel explicitly stated that it was his strategy not to impeach Ms. Albright using the video taken by Mr. Disrow during the people's case-in-chief. Defense counsel was unable to procure the witness he wanted, the man who took the video Mr. Disrow, and defense counsel blamed the court for not allowing him funds to procure the testimony of that individual. Here we have a situation where defense counsel claimed it was his trial strategy not to impeach a victim without having Mr. Disrow present. A review of defendant's exhibit number one provides that Mr. Disrow does most of the talking. Ms. Albright states on the video for Mr. Disrow that she was attacked by defendants and the defendant was guilty of any crime. The video does little to no impeachment value to Ms. Albright's testimony as it does not refute the facts presented in her trial testimony. Mr. Disrow in the video still puts defendant at the scene stating he had given a guy a ride and state that defendant did not know what the guy was going to do when he got inside. Ms. Albright does not state in the video that defendant did not go inside the home nor does she say defendant did not go through the pockets or take anything from her. Her agreement in the video that defendant did not know what was going to happen would not be admissible as she could not know defendant's state of mind. Her opinion in the video as to whether defendant was guilty of a crime was irrelevant. Ultimately defendant was not prejudiced by defense counsel's failure to impeach Ms. Albright using the video because Ms. Albright was only one of the witnesses. Testimony from Ms. Payne, Ms. Littlefield and Ms. Schnicker provided enough evidence to convict defendant. The evidence against defendant was overwhelming and the impeachment of Ms. Albright would not affect the outcome trial. Defendant also takes issue with trial counsel's inability to elicit testimony regarding Dante Harris's criminal intent but this argument fails. Prior to trial the trial court ruled that defense counsel could attempt to elicit testimony that the incident stemmed from Dante Harris giving out his credit card information to the victims and his belief that the victim stole this money. Of course it is unknown what would have been Ms. Payne or Ms. Albright's testimony regarding Dante Harris's belief where the money they were seeking came from as no formal offer of proof was made. When a trial court refuses to admit evidence a formal offer of proof is necessary to to preserve an appealable issue. Furthermore despite the trial court's ruling that defense counsel could pursue testimony regarding the women allegedly being involved in the theft of money off Dante Harris's debit card it's unclear how this evidence would have assisted. There does not appear to be any actual evidence as to whether defendant was aware or was not aware of the alleged theft from Dante Harris. It would do nothing to change the fact the defendant entered the dwelling armed with a baseball bat and acted in furtherance of the armed robbery by removing items from the victims. Defense counsel did try to elicit this evidence through Dana Littlefield's testimony and asked her whether there was an episode concerning Dante Harris's debit card. Ms. Littlefield testified earlier that day of the incident Ms. Albright said something about not having a jacket and Dante said he would buy her one so Dante Harris asked Ms. Littlefield to call and check how much money was left on her which she did. Ms. Littlefield testified that she never had any conversations with Ms. Payne or Ms. Albright about Dante acting the way he was because of the problem with his debit card. This line of questioning makes the defense counsel try to establish that Dante Harris was looking for his missing money which he believed Ms. Albright had stolen off his debit card but ultimately trial counsel was not ineffective during trial and defendant was not prejudiced by the issues complained of given the evidence of was ineffectiveness at sentencing. Here there were few factors present in litigation. Defense counsel tried to argue that there were mitigating factors that the evidence that defendant carefully searched the victim's pockets never hit the victims with his bat was mitigating. Defense counsel also remarked the defendant was 65 years old but there were very obvious factors and aggravation present that the court found persuasive. One of the victims became permanently blind in one eye. The trial court found that the necessity to protect the public to warrant a lengthy sentence and sentenced the defendant to 25 years. Defense counsel cannot be considered ineffective because the trial court exercised sound judgment in sentencing defendant. Defendant argues that trial counsel should have pointed out the time frame of this prior conviction that defendant was in remission from cancer and the age of the defendant. However, all that information was in the pre-sentence investigation report and the trial court specifically stated it read it more than twice or read it more than once. Thus the evidence defendant argues on appeal of which his counsel should have informed the trial court. The trial court was obviously aware. As such even if counsel had argued as defendant now suggests it would not have changed the result of the sentencing hearing since defendant cannot show prejudice as ineffective assistance of argument fails. I will stand on my brief for the remainder of the issues. Are there any questions I could answer at this time? Justice Walsh? No questions. Justice Warren? No other questions. Okay. Thank you, Ms. Hirons. Mr. Evers, rebuttal for the state, or for the defendant, I'm sorry. Of course. Very briefly, Your Honor. The fact that Mr. Harris had to yell at Mr. Taylor to do anything about touching pockets or anything, and he acted very tentatively, is ultimately kind of the most powerful evidence we have that the state presented that there wasn't a common design or shared criminal intent. I just wanted to reinforce that. But moving to the ineffectiveness thing, the video was inconsistent. The inconsistent statement, as our authorities talk about, doesn't have to be directly contradictory. It can be silent. It can cause confusion or be slightly different. It was inconsistent because Ms. Albright said, yes, when asked the question, was Mr. Taylor involved with this or knew anything about that, and basically said it was Harris. It wasn't him. That's powerful information that the jury should have been able to hear as impeachment, but also substantive evidence under Section 115-10.1. That's its power, and keeping it out wasn't trial strategy. Just for the simple reason he tried to get it in. He wanted to use it. So he didn't have a trial strategy not to admit it. He was planning to use it, and he didn't do it properly. He just had to ask the questions or recall Ms. Albright to ask about that. As for how the other statement for the inefficiency for the debit card, they could have asked Harris. He was there. Use immunity. That would have been the most direct evidence, and this chose not to do it. And again, it wasn't strategy because he wanted to use the evidence. He sought it. And finally, in sentencing, the only thing I'll say for there is that there's a large difference between a trial court just reading the bare facts of a PSI report versus an advocate, a defense attorney, putting in context, citing the mitigation statutory factors, and bringing that to the court's attention. Just because the trial attorney or trial court read it doesn't mean the trial court puts on a defense attorney hat and reads it from that perspective. And that's what Mr. Taylor did not have because his attorney did not make that argument. Thank you, Your Honor. Of course, if there's any questions, I would happily entertain those. Justice Welch? No questions. Justice Moore? No questions. Okay. Thank you, Mr. Evers and Ms. Lioratos for your arguments here today. This matter will be taken under advisement. We'll issue an order in due course.